UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSHALL BIEDERMAN,<br><br>    Plaintiff,<br>vs.<br><br>CALGON CARBON CORPORATION, RANDALL S. DEARTH, J. RICH ALEXANDER, WILLIAM J. LYONS, LOUIS S. MASSIMO, WILLIAM R. NEWLIN, JOHN J. PARO, JULIE S. ROBERTS, TIMOTHY G. RUPERT, and DONALD S. TEMPLIN,<br><br>    Defendants. | Civil Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Marshall Biederman ("Plaintiff") brings this suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE OF THE ACTION**

1.  Plaintiff, a stockholder of Calgon Carbon Corporation ("Calgon" or the "Company"), brings this action against Calgon's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.  On September 21, 2017, Kuraray Co., Ltd. ("Kuraray Co."), and the Company

announced that they had entered into an Agreement and Plan of Merger ("Merger Agreement") pursuant to which KJ Merger Sub, Inc. ("Merger Sub," and together with Kuraray Co. "Kuraray"), an indirect, wholly owned subsidiary of Kuraray, will merge with and into Calgon (the "Proposed Transaction"). Pursuant to the terms of the Merger Agreement, if Calgon's stockholder approve the Proposed Transaction, they will receive $21.50 in cash for each share of Calgon stock they own (the "Merger Consideration").

3. On October 27, 2017, defendants issued materially incomplete and misleading disclosures in a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy Statement is deficient and misleading in that it fails to provide adequate disclosures of all material information related to the Proposed Transaction.

4. Accordingly, Plaintiff alleges herein that Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the filing of the Proxy Statement. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of Calgon common stock.

9. Defendant Randall S. Dearth ("Dearth") is the Chairman of the Board, President, and Chief Executive Officer ("CEO") of Calgon. Dearth has been a director of the Company since 2007.

10. Defendant J. Rich Alexander ("Alexander") has served as a member of the Company's board of directors since 2009.

11. Defendant William J. Lyons ("Lyons") has served as a member of the Company's board of directors, since 2008.

12. Defendant Louis S. Massimo ("Massimo") has served as a member of Calgon's board of directors since 2013.

13. Defendant William R. Newlin ("Newlin") has served as a member of Calgon's board of directors since 2005.

14. Defendant John J. Paro ("Paro") has served as a member of the Company's board of directors since 2013.

15. Defendant Julie S. Roberts ("Roberts") has served as a member of the Company's

board of directors since 2000.

16. Defendant Timothy G. Rupert ("Rupert") has served as a member of the Company's board of directors since 2005.

17. Defendant Donald C. Templin ("Templin") joined Calgon's board of directors in 2013.

18. Defendants Templin, Rupert, Roberts, Paro, Newlin, Massimo, Lyons, Alexander, and Dearth are collectively referred to herein as the "Board" or the "Individual Defendants."

19. Defendant Calgon is a global leader in innovative solutions, high quality products and reliable services designed to protect human health and the environment from harmful contaminants in water and air. The Company is a Delaware corporation and maintains its principal offices at 3000 GSK Drive, Moon Township, Pennsylvania 15108. Calgon's common stock is traded on the New York Stock Exchange under the symbol "CCC." The Company is named as a defendant herein solely for the purpose of providing full and complete relief.

20. The Individual Defendants and Calgon are referred to collectively herein as "Defendants."

## OTHER RELEVANT ENTITIES

21. Kuraray incorporated under the laws of Japan, is a global leader in the manufacture and sale of specialty chemicals, resins, fibers, textiles, film productions, high performance material and medical products. Kuraray has offices, research and production facilities in 27 countries, including several production facilities and sales offices across the Americas, cultivating a lineup of world-class products in both developed and emerging markets. Kuraray is a party to the Merger Agreement.

22. Merger Sub is a Delaware corporation, an indirect, wholly owned subsidiary of

Kuraray and was formed solely for the purpose of carrying out the merger.

## FACTUAL BACKGROUND

**Company Background**

23.     Calgon, a leading manufacturer of activated carbon, with broad capabilities in ultraviolet light disinfection, provides purification solutions for drinking water, wastewater, pollution abatement, and a variety of industrial and commercial manufacturing processes. The Company is the world's largest producer of granular activated carbon and supplies more than 100 types of activated carbon products – in granular, powdered, pelletized and cloth form – for more than 700 distinct applications.

24.     Headquartered in Pittsburgh, Pennsylvania, Calgon employs approximately 1,400 people and operates 20 manufacturing, reactivation, innovation and equipment fabrication facilities in the United States, Asia, and in Europe.

25.     Recently, on November 6, 2017, the Company announced its Third Quarter 2017 Financial Results. As indicated by this filing, Calgon is benefiting from improved market conditions and strong contribution from a recent strategic acquisition driving sales and income from operations growth. Net sales for the third quarter of 2017 were $162.6 million, an increase of $38.6 million, or 31.1%, compared to net sales of $124.0 million for the third quarter of 2016. Additionally, income from operations for the third quarter of 2017, which includes $3.3 million of expenses related to the Company's pending merger with Kuraray, was $9.7 million, compared to income from operations of $9.3 million reported for the third quarter of 2016. These positive results evidence a company that is performing well ahead of the Company's own expectations.

26.     Despite the fact that Calgon is well-positioned to enjoy continued financial growth as a standalone company, Calgon's Board, following a lengthy two-year courtship between

Kuraray and Calgon, unanimously declared that the merger and the other transactions contemplated by the merger agreement are advisable, determined that they are fair to and in the best interests of Calgon and its stockholders, and unanimously adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement.

**The Proposed Transaction**

27.     In a joint press release dated September 21, 2017, Calgon and Kuraray announced that they had entered into the Merger Agreement pursuant to which Kuraray will acquire all of the outstanding shares of Calgon common stock for total consideration of approximately $1.1 billion.

28.     The press release states in pertinent part:

Pittsburgh, PA and Tokyo, Japan - September 21, 2017 - Calgon Carbon Corporation (NYSE:CCC) and Kuraray Co., Ltd. (TYO:3405) announced today that their respective Boards of Directors have unanimously approved, and the parties have entered into, a definitive merger agreement under which Kuraray will acquire Calgon Carbon for $21.50 per share in cash, which equates to an equity value of approximately $1.1 billion, and a transaction value in excess of $1.3 billion, including Calgon Carbon's net indebtedness. The transaction remains subject to customary closing conditions, including regulatory approvals and approval by Calgon Carbon stockholders. The parties are targeting a closing by the end of December, 2017. The acquisition will be completed through a merger of a newly-created subsidiary of Kuraray with and into Calgon Carbon, with Calgon Carbon as the surviving corporation.

While this acquisition will enhance Kuraray's growth strategy and global presence in activated carbon and filtration media, it intends to operate Calgon Carbon as a separate subsidiary of Kuraray. The companies will align the organization and operation for optimal customer support from Calgon Carbon's world headquarters in Pittsburgh, Pennsylvania. Kuraray and Calgon Carbon have complementary products and services, and the combined organization will continue to focus on the highest quality activated carbon and filtration media products, equipment and services for customers around the world. The combination will strengthen Kuraray's focus on contributing to human health, and the sustainability of the environment through innovative and high quality products around the world.

Randy Dearth, Calgon Carbon's Chairman, President and CEO, said of the acquisition, "Not only does this transaction deliver premium value to our stockholders, it also benefits our customers and employees by making Calgon Carbon part of a much larger, stronger global company with resources to fully

support our global activated carbon, filtration media and service businesses now, and well into the future."

Masaaki Ito, Kuraray's Representative Director and President said, "For Kuraray, the integration of Calgon Carbon's excellent employees all around the world, their R&D and sales expertise, and their manufacturing operations will contribute to the expansion of our carbon materials business, which leads our key strategic areas such as 'water and environment,' and 'energy.' Together, Kuraray and Calgon Carbon will help advance human health and environmental sustainability by providing high performance carbon materials to the market."

Morgan Stanley & Co. LLC is acting as the financial adviser to Calgon Carbon and Jones Day is serving as legal counsel. Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Kuraray and Mayer Brown LLP is serving as legal counsel.

**The Proxy Statement Misleads Stockholders By Failing To Provide Material Information**

29.     On October 27, 2017, Calgon filed a Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement contains material misrepresentations and omissions of fact that must be cured to allow Calgon's stockholders to render an informed decision with respect to the Proposed Transaction.

30.     As discussed below, the Proxy Statements omits material regarding Calgon's financial projections, as well as the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

31.     This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Calgon stockholders. Accordingly, Calgon stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

   *Material Omissions Concerning Calgon's Financial Projections & Morgan Stanley's Financial Analyses*

7

32.     While the Proxy Statement discloses some of the Company's financial projections, it omits certain projections that Morgan Stanley actually used in its valuation analyses to support its fairness opinion. As part of Morgan Stanley's *Discounted Cash Flow Analysis*, Morgan Stanley calculated a range of implied values per share of Calgon common stock based on estimates of future cash flows for calendar years 2017 through 2021 using two sets of projections. The first set of projections was provided by Company management ("Management Case"). The second set of projections were based on the median Wall Street broker projections through fiscal year 2019 and which were then extrapolated forward based on Calgon's management's estimated revenue growth and estimated margin improvement rates for fiscal years 2020 and 2021 ("Street Case"). While the Proxy Statement discloses some of the Management Case projections, the Proxy Statement completely omits to disclose to stockholders the Street Case projections that were relied upon by Morgan Stanley in its analysis.

33.     The Proxy Statement discloses omits the values for UFCF and the line items used in its calculation. In performing its *Discounted Cash Flow Analysis*, Morgan Stanley used the Company's projected unlevered free cash flows in its valuation analyses to support its opinion that the merger consideration is fair to the Company's stockholders. However, because neither the UFCF projections, nor the line items used to calculate UFCF, are disclosed, stockholders are unable to evaluate Morgan Stanley's *Discounted Cash Flow Analysis,* which is based upon undisclosed financial projections for the Company.

34.     Accordingly, with respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement omits to disclose: (i) the Company's projected Management Case and Street projections of unlevered free cash flows for years 2017 through 2021, and their respective line items, as used by Morgan Stanley in its analysis; (ii) the Street Case estimates based on the median

Wall Street broker projections through fiscal year 2019, the extrapolated projections through 2021, and the estimated revenue growth and estimated margin improvement rates for fiscal years 2020 and 2021 provided by Calgon Carbon's management. Additionally, with respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement also omits to disclose: (i) the inputs and assumptions underlying the discount rate range of 8.4% to 10.1% used by Morgan Stanley in its analysis; and (ii) the perpetuity growth rate ranges implied by Morgan Stanley's analysis.

35.     When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if Calgon stockholders are to make a fully informed decision.  The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

36.     Without such undisclosed information, Calgon stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

37. The omission of this material information renders the Proxy Statement false and misleading, including, inter alia, the following sections of the Proxy Statement: (i) "Certain Calgon Carbon Unaudited Prospective Financial Information;" (ii) "Recommendation of the Calgon Carbon Board of Directors;" (iii) "Opinion of Morgan Stanley & Co. LLC;" and (iv) "Background of the Merger."

**FIRST CAUSE OF ACTION**
**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder**

38. Plaintiff repeats and realleges each allegation set forth herein.

39. As detailed herein, Defendants disseminated the false and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

40. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Calgon.

41. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants. The Proxy Statement misrepresented and omitted material facts, including material information about the

unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

42. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION
**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

44. Plaintiff repeats and realleges each allegation set forth herein.

45. The Individual Defendants acted as controlling persons of Calgon within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Calgon and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends

are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(B) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

(C) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(D) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E) granting Plaintiff such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: November 8, 2017

Respectfully Submitted,

| | | |
|---|---|---|
| | | **LAW OFFICE OF ALFRED G. YATES, JR., P.C.** |
| **OF COUNSEL:** | By: | /s/ Alfred G. Yates, Jr.<br>Alfred G. Yates, Jr. (PA17419) |
| **LEVI & KORSINSKY LLP**<br>Donald J. Enright<br>Elizabeth K. Tripodi<br>1101 30th Street, N.W., Suite 115<br>Washington, D.C. 20007<br>Telephone: (202) 524-4290<br>Facsimile: (202) 333-2121<br>Email: denright@zlk.com<br>etripodi@zlk.com | | Gerald L. Rutledge (PA62027)<br>300 Mt. Lebanon Boulevard,<br>Suite 206-B<br>Pittsburgh, PA 15234<br>Telephone: (412) 391-5164<br>Facsimile: (412) 471-1033<br><br>*Attorneys for Plaintiff* |